## Double Liability of Stockholders of Trust Companies.

*Corporations—Trust companies—Double liability of stockholders—Acts of April 29, 1874, May 11, 1874, and May 9, 1923.*

1. The Act of May 11, 1874, P. L. 135, imposing a double liability on stockholders of trust companies, applies only to such trust companies as were created prior to the adoption of the new Constitution, and which were given the right to engage in a banking business by discounting notes. It does not apply to companies incorporated under the General Corporation Act of April 29, 1874, P. L. 73, and its supplements.

2. The Act of May 9, 1923, P. L. 173, authorizing trust companies to engage in a banking business by discounting notes, does not of itself bring the stockholders within the liability imposed by the Act of May 11, 1874, P. L. 135.

3. It is only where trust companies have accepted the provisions of the Act of 1923 that the stockholders become liable to double the amount of their stock.

Department of Justice. Opinion to Hon. Peter G. Cameron, Secretary of Banking.

BROWN, Dep. Att'y-Gen., Feb. 5, 1926.—This department has received your letter, asking whether or not the stockholders of the Carnegie Trust Company come under the provisions of the Act of May 11, 1874, P. L. 135, which imposes a double liability on "all stockholders in banks, banking companies, savings funds institutions, trust companies and all other incorporated companies doing the business of banks or loaning and discounting moneys as such in this Commonwealth," and asking if it is your duty to proceed to undertake to collect from such stockholders.

Prior to the passage of the Act of May 9, 1923, P. L. 173, the question of the liability of stockholders such as those of the Carnegie Trust Company had been passed upon and definitely decided.

The Act of May 11, 1874, P. L. 135, entitled "An act fixing the liability of stockholders of banks and banking companies and other banking institutions in this Commonwealth," provides: "That from and after the passage of this act, all stockholders in banks, banking companies, savings fund institutions, trust companies and all other incorporated companies doing the business of banks or loaning or discounting moneys as such in this Commonwealth, shall be personally liable for all debts and deposits in their individual capacity to double the amount of the capital stock held and owned by each."

The Carnegie Trust Company was not, however, incorporated at the time of the passage of the Act of 1874, but was incorporated under the provisions of the General Corporation Act of April 29, 1874, P. L. 73, and its supplements, and one of those supplements, namely, the Act of May 9, 1889, P. L. 159, specifically declares that "nothing herein contained shall authorize said companies to engage in the business of banking."

The question of the liability of stockholders under the Act of 1874, as is here raised, came before the Supreme Court in the case of De Haven v. Pratt, 223 Pa. 633. The Union Surety and Guaranty Company of the City of Philadelphia became insolvent and Alexander M. De Haven was appointed receiver. He filed his bill against the stockholders to charge them with double the par value of the stock in addition to the regular payment of its par value, on the ground that the funds so to be raised were needed for the payment of the company's debts. The case having come on for hearing in the court below, the bill was dismissed and an appeal was thereupon taken to the Supreme Court. That court, speaking through Mr. Justice Elkin, in delivering the opinion, held: "There is but a single question to be determined on this appeal, and it is an interesting and important one. Does the Act of May 11, 1874, P. L. 135, which imposes a double liability upon the stockholders of banks, banking companies and other banking institutions, apply to trust companies incorporated under the General Corporation Act of 1874, and the supplements thereto? . . . In our State the privileges, powers and liabilities of banks and banking institutions have been cautiously conferred and carefully imposed. Our courts have frequently defined what a bank or banking institution is within the meaning of the law, and what is meant by the legislative expressions 'doing a banking business' or 'to engage in the business of banking,' but in no instance has it been held that a trust company, deriving its powers under a special act of assembly passed prior to the adoption of the new Constitution, which did not, in express terms, confer banking privileges, or which was incorporated under the General Corporation Act of April 29, 1874, P. L. 73, and the supplements thereto, which, in equally express terms, denied the right of such company to engage in the business of banking, was a bank or banking institution or company doing a banking business. It is true that in the days of special legislation the legislature did create a few so-called trust companies and authorized them to do a general banking business, and such companies enjoyed whatever powers were conferred upon them by the special charters granted. Even under these special grants of power, the courts carefully pointed out the distinction between banking institutions proper and banks, so called, which did not engage in a general banking business, by defining the powers and liabilities of each class of institution. This was the situation when the new Constitution was adopted. In section 11 of article XVI of that instrument, it is provided that no corporate body shall be created or

Double Liability of Stockholders of Trust Companies.

organized to possess banking and discounting privileges without three months' previous public notice being given of the intention to apply therefor, nor shall a charter for such privilege be granted for a longer period than twenty years. This is the organic law, and it cannot be laid aside or disregarded. In the present case, the insolvent trust company, represented by the receiver, the appellant, was not created in pursuance of any law authorizing it to do a general banking business, nor was its incorporation preceded by three months' public notice of its intention to apply for such privileges, nor is the term of the enjoyment of the powers conferred limited to twenty years. Its charter is perpetual. If it should be determined that this trust company by its charter was authorized to engage in the business of banking, it would necessarily follow that the act of incorporation was a nullity because in violation of the plain provisions of the Constitution which were not complied with. To so hold would mean the striking down of all trust companies throughout the Commonwealth with their large volume of business and vast capitalization. The organization of trust companies in our State, under the General Corporation Act of 1874, and acts supplementary thereto, can only be sustained on the ground that they are not banks or banking institutions authorized to do a banking business."

It was, therefore, held that the words "trust companies," as used in the Act of May 11, 1874, applied only to such trust companies as were created by special acts prior to the adoption of the new Constitution and which were given the right to engage in a banking business; that the double liability of corporation stockholders does not exist unless imposed by statute, and statutes imposing such liability are to be strictly construed; and that there is no statute imposing a double liability upon trust companies incorporated under the general laws.

This same question was raised and decided in a like manner in Rathfon, Receiver of the City Saving Fund and Trust Co., v. Rhoads et al., 27 Lanc. Law Rev. 345.

Does the Act of May 9, 1923, P. L. 173, make any difference in this situation and impose upon the stockholders in the Carnegie Trust Company a double liability as provided for in the Act of 1874?

The Act of 1923 authorizes and empowers every trust company and bank organized and incorporated under the laws of the Commonwealth to discount, buy, sell, negotiate, assign promissory notes, drafts, bills of exchange . . . and to receive and retain in advance interest on loans and discounts made.

The mere fact that a trust company or bank organized and incorporated under the laws of the Commonwealth is authorized and empowered to discount and do the other things enumerated in the Act of 1923 does not bring such institution within the provisions of the Act of May 11, 1874. The liability imposed by that act is on stockholders in institutions "doing the business of banks or loaning and discounting money as such." This includes trust companies which have accepted the provisions of the Act of 1923 and are actually exercising the power granted. It does not, however, include institutions which have not accepted the terms of the act and are not exercising any of the powers therein given.

According to the information received by the Department of Banking, the Carnegie Trust Company was not discounting paper at the time it was closed and had not done so since 1905, and the special counsel of the Department of Banking in this matter has ascertained that it had not been discounting and had not availed itself of the powers granted by the Act of 1923. It was conducting its business under the Act of 1874, its supplements and amendments,

and its status was not in any way changed by the Act of 1923. Therefore, the law as enunciated in De Haven *v.* Pratt, 223 Pa. 633, decides the question of the liability of the stockholders in this trust company, and you are advised that any proceeding to impose the double liability as provided by the Act of 1874 would be in vain.

From C. P. Addams, Harrisburg, Pa.